E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
International Narcotics, Money Laundering,
 and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0813
     Facsimile: (213) 894-0141
     E-mail:    daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00353-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S RESTITUTION MEMORANDUM; EXHIBITS A-G; DECLARATION OF STEPHEN LOVEMAN |
| v. | |
| DREW JOSEPH HENRY, | Hearing Date: May 13, 2023 Location:    Courtroom of the Hon. Michael W. Fitzgerald |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Daniel H. Weiner, hereby files its Restitution Memorandum as to defendant Drew Joseph Henry.

//

1      This memorandum is based upon the attached memorandum of points
2  and authorities, the attached exhibits, the declaration of Stephen
3  Loveman and its attached exhibit, the files and records in this case,
4  and such further evidence and argument as the Court may permit.

5  Dated: April 14, 2024          Respectfully submitted,

6                                 E. MARTIN ESTRADA
                                   United States Attorney
7
                                   MACK E. JENKINS
8                                  Assistant United States Attorney
                                   Chief, Criminal Division
9

10                                      /s/
                                   _____
11                                 DANIEL H. WEINER
                                   Assistant United States Attorney
12
                                   Attorneys for Plaintiff
13                                 UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   2

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES.............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   BACKGROUND..................................................2

      A.   Defendant's Actions Caused N.A.'s Death................2

      B.   Expenses Incurred by N.A.'s Family.....................2

           1.   Travel Expenses...................................2

           2.   Funeral and Related Services......................3

           3.   Grief and Psychological Counseling................3

           4.   I.A. and D.A. Lost Wages..........................3

      C.   N.A.'s Lost Future Earnings............................4

      D.   Defendant's Financial Resources and Earning Ability....4

III.  RESITUTION FOR THE FULL AMOUNT OF THE VICTIMS' LOSSES IS
      WARRANTED IN THIS CASE......................................5

      A.   Legal Principles.......................................5

           1.   The VWPA Applies to Violations of 21 U.S.C. § 841....5

           2.   Neither Exactitude Nor Factual Findings Are
                Required..........................................6

      B.   The Court Should Order Defendant to Pay Restitution to
           N.A.'s Parents, Brother, and Estate....................6

      C.   The Restitution Award Should Include the Full Amount
           of N.A.'s Family and Estate's Losses, Including the
           Cost of Phycological Care, Funeral Expenses, and
           Future Lost Income.....................................8

           1.   Travel Expenses...................................9

           2.   Funeral Expenses.................................10

           3.   Medical, Psychiatric, and Related Expenses.......10

           4.   D.A. and I.A.'s Lost Income......................11

i

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                                                           <u>PAGE</u>

        5.   Victim N.A.'s Lost Income...........................12

    D.   Manner of Repayment....................................14

IV.  CONCLUSION.......................................................15

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

<u>Hughey v. United States</u>,
   495 U.S. 411 (1990) ............................................. 5

<u>Jones & Laughlin Steel Corp. v. Pfeifer</u>,
  462 U.S. 523 (1983) ............................................ 13

<u>United States v. Acosta</u>,
  303 F.3d 78 (1st Cir. 2002) ................................... 7, 8

<u>United States v. Anderson</u>,
  741 F.3d 938 (9th Cir. 2013) .................................... 6

<u>United States v. Benally</u>,
  550 F. App'x 382 (9th Cir. 2013) ............................... 11

<u>United States v. Cienfuegos</u>,
  462 F.3d 1160 (9th Cir. 2006) ......................... 10, 12, 13

<u>United States v. Day</u>,
  418 F.3d 746 (7th Cir. 2005) .................................... 9

<u>United States v. Dayea</u>,
  73 F.3d 229 (9th Cir. 1995) .................................... 10

<u>United States v. Diaz</u>,
  865 F.3d 168 (4th Cir. 2017) .................................... 9

<u>United States v. Eyraud</u>,
  809 F.3d 462 (9th Cir. 2015) .................................... 6

<u>United States v. Gordon</u>,
  393 F.3d 1044 (9th Cir. 2004) ................................... 6

<u>United States v. Green</u>,
  722 F.3d 1146 (9th Cir. 2013) ................................... 7

<u>United States v. Hicks</u>,
  997 F.2d 594 (9th Cir. 1993) ................................... 10

<u>United States v. Jackson</u>,
  982 F.2d 1279 (9th Cir. 1992) ................................... 8

<u>United States v. Keith</u>,
  754 F.2d 1388 (9th Cir. 1985) ................................... 8

<u>United States v. Pearson</u>,

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                  PAGE

   2022 WL 807411 (9th Cir. Mar. 16, 2022) ........................... 6

United States v. Randle,
   324 F.3d 550 (7th Cir. 2003) .................................... 12

United States v. Razo-Leora,
   961 F.2d 1140 (5th Cir. 1992) ................................... 12

United States v. Robertson,
   493 F.3d 1322 (11th Cir. 2007) ................................... 5

United States v. Serawop,
   505 F.3d 1112 (10th Cir. 2007) .............................. 12, 14

United States v. Sizemore,
   850 F.3d 821 (6th Cir. 2017) .................................... 9

United States v. Waknine,
   543 F.3d 546 (9th Cir. 2008) .................................... 6

United States v. Williams,
   353 F.Supp.3d 14 (D.D.C. 2019) .................................. 9

STATUTES

18 U.S.C. § 3663........................................................ 1
18 U.S.C. § 3663(a)(1)(A)............................................ 5, 6
18 U.S.C. § 3663(a)(2).............................................. 1, 5
18 U.S.C. § 3663(b)(2)................................................ 12
18 U.S.C. § 3663(b)(2)(A)............................................ 10
18 U.S.C. § 3663(b)(3)............................................... 10
18 U.S.C. § 3663(b)(4)............................................ 9, 12
18 U.S.C. § 3664(e)................................................... 6
18 U.S.C. § 3664(f)(1)(A)............................................. 9
18 U.S.C. § 3664(f)(2)............................................ 8, 14
21 U.S.C. § 841..................................................... i, 5

iv

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3     N.A. died of fentanyl poisoning on October 6, 2018 at the age of

4  25.  On September 13, 2023, defendant Drew Joseph Henry ("defendant")

5  pleaded guilty to distributing the deadly fentanyl that killed N.A.

6  (Dkt. 103.)  On February 12, 2024, this Court sentenced defendant to

7  156 months' imprisonment followed by five years' supervised release.

8     The government now seeks restitution under the Victim and

9  Witness Protection Act (the "VWPA") for financial losses stemming

10  from defendant's distribution of fentanyl resulting in victim N.A.'s

11  death.  See 18 U.S.C. § 3663.  The victims of defendant's actions --

12  his mother (I.A.), his father (D.A.), and his brother (J.A.) -- are

13  identifiable, as all were "directly and proximately harmed as a

14  result of the commission of" defendant's offense.  18 U.S.C.

15  § 3663(a)(2).  Defendant directly and proximately caused N.A.'s

16  family and estate to incur expenses for:

17     (i) travel related to the investigation and these proceedings

18  for D.A. and I.A. totaling approximately $3,623.08;

19     (ii) N.A.'s funeral and related expenses incurred by D.A. and

20  I.A. totaling approximately $3,879.78;

21     (iii) grief and psychological counseling incurred by I.A. and

22  J.A. totaling approximately $17,740;

23     (iv) lost wages for I.A. and D.A. totaling approximately

24  $25,306.80; and

25     (v) a loss to N.A.'s estate of an estimated $312,989.79 in

26  future income.

27  //

28

In accordance with the VWPA and the Sentencing Guidelines, the government respectfully requests that this Court exercise its discretion under the VWPA and enter a restitution order for the full amount of the victims' losses resulting from N.A.'s death.

**II.  BACKGROUND**

**A.  Defendant's Actions Caused N.A.'s Death**

On October 6, 2018, defendant traveled to N.A. and sold him a gram of fentanyl for $200. (PSR ¶ 8.)  As noted in the PSR, N.A. contacted defendant through one of the multiple advertisements on Craigslist in which defendant advertised fentanyl for sale. (<u>Id.</u> ¶ 9.) Shortly after consuming defendant's fentanyl, N.A. died of fentanyl poisoning. (<u>Id.</u>)

At defendant's sentencing, I.A., D.A., and J.A. gave victim impact statements, each noting how defendant's conduct and the consequences of his actions forever impacted their lives.

**B.  Expenses Incurred by N.A.'s Family**

N.A.'s parents and brother provided information to the government regarding four categories of costs they incurred related to N.A.'s death.  Those categories are: (i) travel expenses; (ii) costs associated with N.A.'s funeral; (iii) grief counseling; and (iv) lost wages.

**1.  <u>Travel Expenses</u>**

Attached as Exhibit A is a letter from D.A. outlining his costs associated with N.A.'s death and associated receipts.  D.A.'s letter identifies a total of $1,622.40 associated to travel for court proceedings.  (Ex. A at 1.)  This amount did not include an additional round trip to Los Angeles for defendant's sentencing, which totaled approximately $540.80.  Accordingly, D.A.'s travel

expenses total approximately $2,163.20.  Exhibit A also includes an additional letter from D.A. to the Court.

Attached as Exhibit B are receipts from I.A. outlining her costs associated with N.A.'s death.  I.A.'s receipts, which include emergency travel to Los Angeles in the days following N.A.'s death, total approximately $1,459.88.

### 2.   Funeral and Related Services

Exhibit A at pages 1 and 4-6 outline D.A.'s costs associated with N.A.'s funeral and related services, totaling approximately $3,304.78.

Attached as Exhibit C are receipts from I.A. for costs associated with N.A.'s funeral and related services, totaling approximately $575.

### 3.   Grief and Psychological Counseling

Attached as Exhibit D are I.A.'s payments to counselors for grief/psychological counseling sessions following N.A.'s death.  The checks total approximately $2,740.

Attached as Exhibit E is an email from J.A. estimating total grief/psychological costs following N.A.'s death at approximately $15,000 ($150/hour for approximately 100 sessions).

### 4.   I.A. and D.A. Lost Wages

Exhibit A at pages 1-3 outline D.A.'s lost wages as a result of N.A.'s death, totaling approximately $22,429.44.

Attached as Exhibit F are documents from I.A. outlining her lost wages as a result of N.A.'s death.  Page 2 of the exhibit includes I.A.'s calculation that estimates her wage loss at $2,877.36.  I.A. also notes in Exhibit F that, as a result of N.A.'s death, she resigned from her employment because she was unable to focus.  Her

1  early retirement also caused her to start receiving Social Security

2  income earlier than she anticipated.

3      **C.   N.A.'s Lost Future Earnings**

4      At the time of his death, N.A. was an electrician trainee at

5  Electrical Solutions Provider earning approximately $59,078.40 per

6  year.  Based on the attached declaration of forensic auditor Stephen

7  Loveman, N.A.'s lost future earnings payable to his estate total

8  approximately $312,989.79.[1]

9      Attached as Exhibit G are: (i) two weekly paystubs for N.A. for

10  the time periods of 5/28/2018-6/3/2018 and 7/23/2018-7/29/2018; and

11  (ii) an excerpt of N.A.'s 2018 income taxes.  Based on these figures,

12  Mr. Loveman conservatively estimated N.A.'s annual salary at

13  $59,078.40.  As detailed in the his declaration, Mr. Loveman then

14  adjusted N.A.'s future lost income stream to a net present value.

15  Mr. Loveman then discounted that net present value by decreasing the

16  portion of income that would have been consumed by N.A.  Mr. Loveman

17  also made conservative assumptions that N.A.'s lost income was

18  limited to lost wages, and did not include retirement or investment

19  income, or the value of any employment benefits, such as health care,

20  vacation days, or paid sick leave.  In sum, Mr. Loveman estimated

21  that the present value of N.A.'s lost future earnings totaled

22  approximately $312,989.79.

23      **D.   Defendant's Financial Resources and Earning Ability**

24      The PSR noted that defendant reported no assets and no

25  liabilities, and noted that defendant did not appear to have the

26  present and future ability to pay a fine.  (PSR ¶¶ 80-85.)

27

28      [1] N.A.'s family will appoint D.A. as the representative of the estate should the Court award restitution to the estate.

4

Nonetheless, the government notes that defendant has a master's degree in physics from USC, and has previously worked at the USC physics department, the UCLA geology lab, and a technology company where he earned $15/hour.  (Id. ¶¶ 69-79.)

### III.  RESITUTION FOR THE FULL AMOUNT OF THE VICTIMS' LOSSES IS WARRANTED IN THIS CASE

#### A.  Legal Principles

##### 1.  The VWPA Applies to Violations of 21 U.S.C. § 841

Under the VWPA, a court "may order . . . that the defendant make restitution to any victim" of a covered offense, "or if the victim is deceased, to the victim's estate."  18 U.S.C. § 3663(a)(1)(A).  A "victim" is any "person directly and proximately harmed as a result of" the offense for which restitution is authorized.  18 U.S.C. § 3663(a)(2); Hughey v. United States, 495 U.S. 411, 418 (1990).[2] "In the case of a victim who is . . . deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights."  18 U.S.C. § 3663(a)(2).

The VWPA specifically authorizes restitution for drug trafficking offenses, including violations of 21 U.S.C. § 841. Id. § 3663(a)(1)(A); United States v. Pearson, No. 20-10239, 2022 WL 807411, at *1 (9th Cir. Mar. 16, 2022) (finding that the VWPA authorizes restitution for distribution of fentanyl resulting in death).

---

[2] Directly and proximately means that "a particular loss would not have occurred but for the conduct underlying the offense of conviction" and the "causal connection between the conduct and the loss is not too attenuated (either factually or temporally)."  United States v. Robertson, 493 F.3d 1322, 1334 (11th Cir. 2007).

2.  <u>Neither Exactitude Nor Factual Findings Are Required</u>

The government bears the burden of establishing the amount and type of restitution by a preponderance of the evidence.  <u>See</u> 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence."); <u>United States v. Eyraud</u>, 809 F.3d 462, 467 (9th Cir. 2015).  Although "[s]peculation and rough justice are not permitted," "exact precision is not required and district courts do have a degree of flexibility in accounting for a victim's complete losses."  <u>United States v. Anderson</u>, 741 F.3d 938, 954 (9th Cir. 2013).  Accordingly, "a reasonable estimate [of the victim's losses] will suffice."  <u>Id</u>. (internal quotation marks omitted).  The "restitution process [should] be expedient and reasonable, with courts resolving uncertainties with a view toward achieving fairness to the victim." <u>United States v. Gordon</u>, 393 F.3d 1044, 1060 (9th Cir. 2004), abrogated on other grounds by <u>Lagos v. United States</u>, 584 U.S. 577 (2018).  For that reason, the court is "not required to make explicit findings to justify its restitution order."  <u>United States v. Waknine</u>, 543 F.3d 546, 556 (9th Cir. 2008).

**B.  The Court Should Order Defendant to Pay Restitution to N.A.'s Parents, Brother, and Estate**

The VWPA authorizes the Court to order restitution to victims of drug trafficking crimes or, if the victim is deceased, to the victim's estate.  18 U.S.C. § 3663(a)(1)(A).  The purpose of restitution "is not to punish the defendant, but to make the victim whole again."  <u>United States v. Green</u>, 722 F.3d 1146, 1150 (9th Cir. 2013); <u>see also</u> <u>United States v. Acosta</u>, 303 F.3d 78, 86 (1st Cir. 2002) ("The purpose behind the statute is to 'insure that the

6

wrongdoer make good, to the degree possible, the harm he has caused
to the victim.'"). In determining whether to order restitution, the
VWPA requires courts to consider (1) "the amount of the loss
sustained by each victim as a result of the offense," (2) "the
financial resources of the defendant, [and] the financial needs and
earning ability of the defendant and the defendant's dependents," and
(3) "such other factors as the court deems appropriate." 18 U.S.C.
§ 3663(a)(1)(B)(i). The VWPA also provides that the court may
decline to order restitution where "the complication and prolongation
of the sentencing process resulting from the fashioning of an order
of restitution . . . outweighs the need to provide restitution to any
victims." Id. § 3663(a)(1)(B)(ii). Lastly, the Sentencing
Guidelines provide that "[i]n the case of an identifiable victim, the
court shall [] enter a restitution order for the full amount of the
victim's loss, if such an order is authorized by" the VWPA, among
other statues. U.S.S.G. § 5E1.1(a)(1).

The VWPA factors and Sentencing Guidelines warrant restitution
here. First, defendant's actions caused N.A.'s death and thereby
inflicted financial injury on identifiable victims: N.A.'s parents,
brother, and estate. Specifically, as explained above, N.A.'s
parents incurred expenses related to N.A.'s funeral, travel for court
proceedings, and I.A. and J.A sought grief counseling to cope with
their loss of N.A. Further, defendant's crime deprived N.A.'s estate
of the income N.A. would have earned over his career. There is no
risk that fashioning a restitution order would overcomplicate or
unduly prolong the sentencing process, as the victims and the
resulting harms are known here. See U.S.S.G. § 5E1.1(a)(1)
(authorizing restitution under the VWPA when victims are

"identifiable"). Thus, the Court can and should order defendant to pay restitution to N.A.'s parents, brother, and estate, as that would ensure defendant "make[s] good," at least economically, on the harm he has already caused to N.A.'s family and estate. See Acosta, 303 F.3d at 86.

Second, defendant's present inability to pay due to his incarceration is no impediment to a restitution order. Indeed, the VWPA "does not prohibit a sentencing court from imposing a restitutionary sentence upon a defendant who is indigent at the time of sentencing." United States v. Keith, 754 F.2d 1388, 1393 (9th Cir. 1985). Moreover, a "defendant's future financial situation is indeterminable and could change," making him able to pay some if not all the restitution ordered. United States v. Jackson, 982 F.2d 1279, 1284-85 (9th Cir. 1992). Where a defendant's economic circumstances do not allow for either immediate or future payment of the restitution amount, the court may waive interest on the restitution amount and order the defendant to make payments during the period of imprisonment, pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program, and make nominal payments of at least 10% of defendant's monthly income upon release. See 18 U.S.C. § 3664(f)(2). And even if a restitution order in this case ends up being largely symbolic, justice demands that defendant be held fully accountable for his crimes, which includes making N.A.'s family and estate whole for their financial losses.

> **C.   The Restitution Award Should Include the Full Amount of N.A.'s Family and Estate's Losses, Including the Cost of Phycological Care, Funeral Expenses, and Future Lost Income**

Under the VWPA, once the decision to award restitution has been made, "the court shall order restitution to each victim in the full

1  amount of each victim's losses . . .[,] without consideration of the
2  economic -circumstances of the defendant."  18 U.S.C.
3  § 3664(f)(1)(A); United States v. Diaz, 865 F.3d 168, 180-81 (4th
4  Cir. 2017) (holding that once the discretionary decision to award
5  restitution is made, restitution must be in the full amount of the
6  victim's losses); United States v. Sizemore, 850 F.3d 821, 826-27
7  (6th Cir. 2017) (same); United States v. Day, 418 F.3d 746, 755-57
8  (7th Cir. 2005) (same); but see United States v. Williams, 353
9  F.Supp.3d 14, 26-27 (D.D.C. 2019) (holding that district courts may
10 take a defendant's economic circumstances into account when
11 determining how much restitution to impose under the VWPA).[3]

12     Here, the economic losses resulting from defendant's
13 distribution of fentanyl are outlined below:

14          1.   Travel Expenses

15     The VWPA authorizes restitution "for lost income and necessary
16 child care, transportation, and other expenses related to
17 participation in the investigation or prosecution of the offense or
18 attendance at proceedings related to the offense."  18 U.S.C.
19 § 3663(b)(4).  As outlined in Exhibit A, D.A. incurred travel costs
20 related to the prosecution of the offense and attendance at these
21 proceedings of approximately $1,622.40.  As outlined in Exhibit B,
22 I.A. incurred emergency travel expenses related to N.A.'s death and
23 traveling to court proceedings of approximately $1,459.88.  The Court
24 should order defendant to pay restitution to D.A. and I.A. for these
25 expenses.

26

27 ────────────────────

28     [3] The Court should, of course, take the defendant's financial
circumstances into account in setting the payment schedule.

9

1          2.   <u>Funeral Expenses</u>

2      Where an offense "resulting in bodily injury also results in the

3 death of a victim," the VWPA also authorizes restitution for "the

4 cost of necessary funeral and related services." 18 U.S.C.

5 § 3663(b)(3). Exhibit A shows D.A. incurred such costs totaling

6 approximately $3,304.78 and I.A. incurred such costs totaling

7 approximately $575. The restitution order should require defendant

8 to pay for these costs.

9          3.   <u>Medical, Psychiatric, and Related Expenses</u>

10      In the case of an offense resulting in bodily injury or death,

11 the VWPA authorizes restitution for "the cost of necessary medical

12 and related professional services and devices relating to physical,

13 psychiatric, and psychological care." 18 U.S.C. § 3663(b)(2)(A); <u>see</u>

14 <u>also</u> <u>United States v. Cienfuegos</u>, 462 F.3d 1160, 1164-65 (9th Cir.

15 2006). Exhibit D shows that I.A. incurred approximately $2,740 in

16 costs associated with grief counseling. Exhibit E shows that J.A.

17 incurred approximately $15,000 in such costs.

18      The government notes that the Ninth Circuit has previously

19 explained that "[t]he cost of psychological counseling can be

20 included in a restitution order only when the victim has suffered

21 physical injury." <u>United States v. Hicks</u>, 997 F.2d 594, 601 (9th

22 Cir. 1993); <u>see also</u> <u>United States v. Dayea</u>, 73 F.3d 229, 931 (9th

23 Cir. 1995) ("[T]o be eligible for lost income compensation under

24 § 3663(b)(2), a victim must personally suffer bodily injury," where

25 (b)(2) "indicates that 'the victim' of § 3663(b)(2)(C) must refer to

26 the same 'victim' as the first clause of § 3663(b)(2)"); <u>United</u>

27 <u>States v. Benally</u>, 550 F. App'x 382, 384 (9th Cir. 2013) ("We have

28 previously held that the cost of psychological counseling can only be

1   included in a restitution order when the victim has suffered physical

2   injury."). But those cases, which did not involve a victim who

3   suffered bodily harm (Hicks) or a victim seeking psychological care

4   (Dayea), are distinguishable. Specifically, unlike in Hicks, N.A.

5   did suffer physical injury (his death), which directly caused I.A.

6   and J.A. to incur their counseling expenses. Moreover, to the extent

7   that Dayea limits the applicability of (b)(2)(A) to the victim who

8   suffered physical injury (N.A.), the government respectfully submits

9   Dayea is distinguishable because that case dealt with lost income and

10  not psychological care.

11      The full reimbursement of I.A. and J.A.'s grief counseling is

12  further supported by the Ninth Circuit's decision in Cienfuegos,

13  which underscored the purpose of making victim's whole through an

14  award of restitution. Indeed, at least two other courts in this

15  district recently awarded such costs in a fentanyl overdose case.

16  See United States v. Quintero, 19-cr-00766-CAS at Dkt. 227 (imposing

17  restitution for grief counseling expenses for decedent's parents);

18  United States v. Wolfe, 22-cr-00322-JFW at Dkts. 57, 68 (government

19  and Federal Public Defender's Office agreeing that the defendant in a

20  fentanyl overdose case pay restitution for decedent's mother's

21  therapy expenses). This Court should follow suit and order defendant

22  to pay restitution to I.A. and J.A. for these expenses.

23          4.   D.A. and I.A.'s Lost Income

24      As explained above, the VWPA authorizes restitution "for lost

25  income and necessary child care, transportation, and other expenses

26  related to participation in the investigation or prosecution of the

27  offense or attendance at proceedings related to the offense." 18

28  U.S.C. § 3663(b)(4). Exhibit A shows D.A. incurred lost wages

totaling approximately $22,429.44.  D.A.'s 44 days of missed work immediately followed N.A.'s death, including the day of N.A.'s death when D.A. spoke with investigating officers.  As outlined in Exhibit F, I.A. incurred lost wages totaling approximately $2,877.36 as a result of N.A.'s death.  Moreover, I.A. resigned earlier than expected from her employment because she was unable to focus on work due to N.A's death.  Her early retirement caused her to start receiving Social Security income earlier than she anticipated.  The restitution order should include these costs.[4]

     5.   Victim N.A.'s Lost Income

Under the VWPA, "[i]n the case of an offense resulting in bodily injury to a victim," restitution may include "income lost by such victim as a result of such offense." 18 U.S.C. § 3663(b)(2)(C).  Lost income may also be awarded where, as here, a victim dies as a result of the offense.  Analyzing identical language in the MVRA,[5] the Ninth Circuit held that in the case of a deceased victim, an award of restitution may include the decedent's future lost income. Cienfuegos, 462 F.3d at 1164-65; see also United States v. Razo-Leora, 961 F.2d 1140, 1146 (5th Cir. 1992) (affirming order that defendant pay $100,000 in lost income to victim's widow under VWPA). As the Ninth Circuit reasoned in Cienfuegos, "[i]t would be illogical to assume that the ultimate death of a person who suffered bodily injury eliminates restitution for lost income." 462 F.3d at 1164.

---

[4] The government acknowledges that restitution for these costs is not authorized under 18 U.S.C. 3663(b)(2)(C) under Dayea.

[5] Other than the discretionary nature of restitution under the VWPA and the requirement that a court consider a defendant's economic circumstances, the "'provisions of the VWPA and MVRA are nearly identical in authorizing an award of restitution.'" United States v. Serawop, 505 F.3d 1112, 1118 (10th Cir. 2007) (quoting United States v. Randle, 324 F.3d 550, 555-56 & nn. 2-3 (7th Cir. 2003)).

Accordingly, the VWPA allows the victim's estate "to collect restitution for future lost income" id., which is necessary for the defendant to "fully pay the debt owed to the victim and to society," id. at 1165.

Generally, the lost future income calculation has two stages: (1) "an estimate of the shape of the lost stream of future income;" and (2) "the selection of an appropriate discount rate." Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 539 (1983). Given defendant's current limited ability to pay restitution for lost income, the government has proposed a conservative approach to calculating the stream of N.A.'s lost future income as outlined in the Loveman declaration. Specifically, Mr. Loveman assumed that N.A's salary would have remained constant, at 2018 levels, with no salary growth over time on account of inflation or career progression; that N.A.'s lost income should only include lost wages, to the exclusion of retirement and other income; and a personal consumption offset of approximately 70% should apply to reduce the future lost income by the amount that N.A. would have personally consumed. Moreover, to account for the fact that a lump sum of money today is worth more than the same sum paid out over time, Mr. Loveman calculated the net present value of N.A.'s future income using a discount rate of 4.51%, which is the yield on a 30-year U.S. treasury security to its time of maturity.

Applying this methodology, Mr. Loveman calculated that N.A.'s lost future income totaled approximately $312,989.79. The government

respectfully requests that the court adopt this calculation and order restitution in that amount.[6]

### D.   **Manner of Repayment**

After determining the amount of restitution owed, the court must specify the "manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2).  Here, where defendant's only income will likely come from money he earns while incarcerated and any funds sent to him by family or friends, immediate payment of restitution is unrealistic.  Given that defendant's economic circumstances may not allow for either immediate or full future payment of the restitution amount, the government respectfully requests that the Court order defendant to pay restitution during the period of imprisonment at the rate of not less than $25 per quarter, pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.  If any amount of the restitution remains unpaid after defendant's release from custody, the government requests that defendant be ordered to make nominal monthly payments of at least 10% of defendant's gross monthly income, but not less than $100, whichever is greater, during the period of supervised release, beginning 30 days after the commencement of supervision. Finally, to allow for the possibility of a change in circumstances, the government requests that the Court order that the repayment schedule may be adjusted should future events so warrant.

---

[6] See also United States v. Arthur, No. 14-cr-00848-PHX-SPL, 2019 WL 2100007 (awarding restitution for victim's lost income after applying consumption offset based on Patton-Nelson consumption tables); id. ECF No. 306 (Govt's Mot. for Restitution) (setting forth restitution methodology, including in attached testimony and exhibits); see also Serawop, 505 F.3d at 1114-16.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court order the defendant to pay restitution as outlined above.