Richard W. Raynor (SBN 162289)
LAW OFFICE OF RICHARD W. RAYNOR
407 N. Pacific Coast Highway, Suite 280
Redondo Beach, California 90277
Tel.: (424)257-0284
Fax: (424)258-9462
e-mail: richard@richardraynor.com
Attorney for Defendant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| United States of America, | Case No. 2:19-cr-00353-MWF |
|---|---|
| Plaintiff, | DREW HENRY'S RESTITUTION MEMORANDUM AND OBJECTIONS |
| vs. | |
| Drew Henry, | Date:  May 13, 2024 |
| Defendant. | Time: 2:00 p.m. |
| | Ctrm.: 5A |

Defendant Drew Henry, through counsel, hereby submits the attached restitution memorandum and objections in opposition to the government's request for restitution.

RESPECTFULLY SUBMITTED: May 9, 2024.

_Richard Raynor_
RICHARD W. RAYNOR
Attorney for Defendant
DREW HENRY

MEMORANDUM OF POINTS AND AUTHORITIES..................................................5

I. INTRODUCTION....................................................................................................5

II. LEGAL FRAMEWORK………………………………………………………...6

    A.    THE MANDATORY VICTIM RESTITUTION ACT WHICH
           MAKES RESTITUTION MANDATORY UPON CONVICTION FOR
           CRIMES OF VIOLENCE AND OTHER SPECIFIED OFFENSES,
           DOES NOT APPLY TO DREW HENRY'S OFFFNESE OF
           CONVICTION FOR DRUG DISTRIBUTION…………………………..6

    B.    IN DECIDING WHETHER TO IMPOSE DISCRETIONARY
           RESTITUTION UNDER THE VWPA, THE COURT MUST
           CONSIDER THE AMOUNT OF THE LOSS, THE FINANCIAL
           RESOURCES OF THE DEFENDANT, AND THE COMPLICATION
           OF THE SENTENCING PROCESS IN DETERMINING
           RESTITUTION……..…………………………………………………7

    C.    COURTS SHOULD DECLINE TO IMPOSE RESTITUTION
           FOR FUTURE LOST INCOME WHERE COMPLEX AND
           CONTESTED ………………………………………………………8

    D.    THE SUPREME COURT DECISION IN *UNITED STATES V.*
           *HUGHEY* LIMITS THE SCOPE OF RESTITUTION TO LOSSES
           FROM THE OFFENSE OF CONVICTION AND FOR VICTIMS OF
           THE OFFENSE OF CONVICTION…………………………………..11

    E.    BOTH THE VWPA AND MVRA ALLOW FOR A DEFENDANT TO
           BE BOUND BY AN AGREEMENT TO PAY RESTITUTION THAT IS
           FOR PERSONS OTHER THAN THE VICTIM OF THE OFFENSE….12

III.    Legal Analysis…………………………………………………………….....13

    A.    BECAUSE DREW HENRY CANNOT NOW AND WILL NOT IN
           THE FORSEEABLE FUTURE BE ABLE TO PAY ANYTHING
           MORE THAN SYMBOLIC RESTITUTION, THE COURT
           SHOULD DECLINE TO ORDER THE REQUESTED $362,998.65
           IN RESTITUTION…………………………………………………13

B. THE COURT SHOULD DECLINE TO GRANT RESTITUTION TO THE ESTATE OF N.A. FOR HIS LOST FUTURE INCOME............15

C. THE COURT SHOULD DECLINE TO GRANT RESTITUTION TO N.A.'S PARENTS D.A. AND I.A. FOR THE PARENTS' LOST WAGES ...........................................................................................18

D. THE COURT SHOULD DECLINE TO ORDER RESTITUTIONTO N.A.'S BROTHER AND MOTHER FOR PSYCHOLOGICAL COUNSELING.......................................................................24

IV GENERAL OBJECTIONS TO AN ORDER OF RESTITUTION AND RELATED REQUESTS..................................................................22

A. REQUEST FOR FACTUAL FINDINGS.....................................22

B. THE ABILITY OF A DEFENDANT TO PAY MUST BE CONSIDERED IN DETERMINING WHETHER TO IMPOSE RESTITUTION, AND IF SO, TO ALSO BE CONSIDERED IN DETERMINGING THE AMOUNT OF RESTITUTION.................23

C. OBJECTION TO ANY FINDING THAT N.A.'S FAMILY ARE VICTIMS WITHIN THE MEANING OF THE VWPA.............23

D. OBJECTION IS MADE TO THE RESTITUTION REQUESTED, BECAUSE THE PROCESS VIOLATES THE RIGHT TO A JURY TRIAL UNDER THE SEVENTH AMENDMENT...............24

E. BECAUSE THE FACTS ADMITTED AS PART OF THE PLEA AGREEMENT (DISTRIBUTION RESULTING DEATH) ONLY REQUIRES BUT FOR CAUSATION, THE IMPOSITION OF RESTITUTION REQUIRES ADDITIONAL PROOF OF PROXIMATE CAUSE OF THE HARM CAUSED, WHICH PROOF IS MISSING.....................................................................24

F.     THE IMPOSITION OF RESTIUTION IN THIS CASE, WITHOUT FIRST PRESENTING THE RESTITUTION CLAIMS TO U.S. PROBATION TO ADDRESS IN THE PRESENTENCE INVESTIGATION REPORT, WOULD VIOLATE DUE PROCESS...24

V.     IF ANY RESTITUTION IS GRANTED, PAYMENT CONDITIONS ARE REQUESTED...............................................................................26

VI. CONCLUSION.................................................................................27

MEMORANDUM OF POINTS AND AUTHORITIES

I.     INTRODUCTION

Restitution is not mandatory in this case and this Court should decline to impose restitution because of the loss amount, Drew Henry's lack financial resources, his limited future earning ability, and other factors and objections.  The total amount for the myriad of claims made for restitution is $361,538.65, driven largely by the claim of reimbursement of future lost income on behalf of the decedent N.A. in the amount of $312,989.79.  The claim of loss of future income of the decedent is complex, disputed, and not supported by sufficient data.  Given the large amount of restitution claimed, an evidentiary hearing is required on the disputed issues.

The government concedes that any restitution ordered may be "largely symbolic."  Nonetheless the government seeks hundreds of thousands of dollars in restitution on behalf of the decedent; his mother, his father, and his brother, including some requests which the government concedes are unsupported by the law.  There is no evidence Mr. Henry may be able to pay $361,538.65 in the future.  The VWPA does not permit symbolic restitution orders.  A "VWPA restitution order must be based on 'some evidence the defendant may be able to pay the amount fixed when  required to do so.'" *United States v. English*, 92 F.3d 909, 916-17 (9th Cir. 1996) (quoting *United States v. Ramilo*, 986 F.2d 333, 335 (9th Cir. 1993)).

The victim requests were not presented to U.S. Probation for inclusion in the Presentence Investigation Report (PSR).   That process requires U.S. Probation to provide the victim(s) with affidavit forms for their restitution claims. 18 U.S.C. § 3664(d)(2)(B)  The PSR concluded that although the Victim and Witness Protection Act (VWPA) allow for discretionary restitution for the offense of conviction, there was no identifiable victim.  The government did not object to these findings of the PSR. Mr. Henry also provided affidavits concerning his lack of income as required by 18 U.S.C. § 3664(d)(3), and the PSR concluded that Mr. Henry is unable to pay a fine, and "upon his release from custody, it seems that he will need whatever he earns to support and establish himself in the community."  PSR, ¶85.

## II. LEGAL FRAMEWORK

A.   THE MANDATORY VICTIM RESTITUTION ACT WHICH MAKES RESTITUTION MANDATORY UPON CONVICTION FOR CRIMES OF VIOLENCE AND OTHER SPECIFIED OFFENSES, DOES NOT APPLY TO DREW HENRY'S OFFFNESE OF CONVICTION FOR DRUG DISTRIBUTION

While not applicable here, the government relies heavily on cases interpreting and applying the Mandatory Victim Restitution Act ("MVRA")  18 U.S.C. § 3663A. Because those cases concern a different statute, it is important to distinguish the MVRA from the Victim and Witness Protection Act ("VWPA"), which applies to the

crime of drug distribution in violation of 21 U.S.C. § 841.

The MVRA makes restitution mandatory for crimes of violence, fraud, property offenses, and certain other crimes. 18 U.S.C. § 3663A(c). Where the MVRA applies, the court "**shall order**" restitution to the victim. 18 U.S.C. § 3663A(a)(1). In contrast, where the VWPA applies, the court "**may order**" restitution to the victim. 18 U.S.C. § 3663(a)(1)(A).

> **B.    IN DECIDING WHETHER TO IMPOSE DISCRETIONARY RESTITUTION UNDER THE VWPA, THE COURT MUST CONSIDER THE AMOUNT OF THE LOSS, THE FINANCIAL RESOURCES OF THE DEFENDANT, AND THE COMPLICATION OF THE SENTENCING PROCESS IN DETERMINING RESTITUTION**

Under the VWPA, "[t]he court, when sentencing a defendant convicted of [an offense under] . . . the Controlled Substances Act . . . may order . . . that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate." 18 U.S.C § 3663(a)(1)(A).

The court, in determining whether to order restitution under this section, shall consider-- (I) the amount of the loss sustained by each victim as a result of the offense; and

(II) the financial resources of the defendant, the financial needs and

earning ability of the defendant and the defendant's dependents,  and  such

other  factors  as  the  court  deems appropriate.

18 U.S.C. § 3663(a)(1)(B)(i).

The VWPA contains a complexity exception that allows courts to decline to order restitution. "To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order." 18 U.S.C. § 3663(a)(1)(B)(ii).

"A court may only award restitution as specifically authorized by the VWPA in 18 U.S.C. § 3663." *United States v. Dayea*, 73 F.3d 229, 231 (9th Cir. 1995) (citing *United States v. Hicks*, 997 F.2d 594, 600-01 (9th Cir. 1993)). "This Act is not the equivalent of a wrongful death statute under which very broad recovery is permitted." *Id*. "Section 3663(b) lists both who may receive restitution and the kinds of losses which an award may compensate." *Id*. at 231.

C.   COURTS SHOULD DECLINE TO IMPOSE RESTITUTION FOR FUTURE LOST INCOME WHERE COMPLEX AND CONTESTED

The government's request for a lifetime of lost future income for N.A. makes up the bulk of the restitution requested by the government in this case.  Where claims for

future lost income are complex and contested, such a claim under the VWPA should be denied.

In *United States v. Fountain*, 768 F.2d 790, 801-802 (7th Cir. 1985), the Seventh Circuit found that "projecting lost future earnings has no place in criminal sentencing if the amount or present value of those earnings is in dispute." Judge Posner reasoned:

> "The reason for treating past and future earnings differently is practical: the calculation of lost future earnings involves the difficult problem of translating an uncertain future stream of earnings into a present value….It is not a problem meet for solution in a summary proceeding ancillary to sentencing for a criminal offense."

The Court concluded:

> "Obeying the statutory directive that 'the imposition of such order ... not unduly complicate or prolong the sentencing process,'… we hold that an order requiring a calculation of lost future earnings unduly complicates the sentencing process and hence is not authorized by the Victim and Witness Protection Act--unless, to repeat a vital qualification, the amount is uncontested, so that no calculation is required."

*Id*. at 802.

Although the statute has been amended since *Fountain* was decided, the current version of referenced provision is the same in substance, and states:

> "To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."

18 U.S.C. § 3663(a)(1)(B)(ii).

In *United States v Oslund*, 453 F.3d 1048 (8th Cir. 2006), the Eighth Circuit recognized the holding in *Fountain* as still valid, but reached a different result because the future lost wages were uncontested.  Likewise, the Ninth Circuit cited to *Fountain* for the proposition that "[i]n many cases, an order of restitution for future losses may be inappropriate because the amount of loss is too difficult to confirm or calculate." *United States v. Laney*, 189 F.3d 954, 968 n.14 (9th Cir. 1999).

The main authority on which the government relies for the imposition of restitution for future lost income is *United States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006).  In that case the defendant drove a car to run over and kill a victim.  The government made a claim for restitution for future lost wages on behalf of the estate of the decedent who was run over by the defendant, to which the MVRA applied.  The defendant signed a plea agreement to a charge which was then a crime of violence. The plea agreement required the defendant to pay restitution.  The Ninth Circuit in *Cienfuegos* did not dismiss the reasoning of *Fountain*, but instead distinguished that case.  First, in *Cienfuegos*, the Ninth Circuited pointed out that the case before it involved the MVRA by which restitution was mandatory, whereas *Fountain* involved the VWPA which allowed the denial of restitution where it would make the sentencing process more complex and prolonged.  *Id*. at 1168.  In contrast to the application of the VWPA in *Fountain*, the Ninth Circuit pointed out that the "MVRA made the

'complexity exception' inapplicable to crimes of violence." *Id*.   Thus, the main reasoning undergirding the decision in *Fountain* was not present in *Cienfuegos*. Therefore, *Cienfuegos* does not undermine the application of *Fountain* here.

D.     THE SUPREME COURT DECISION IN *UNITED STATES V.
        HUGHEY* LIMITS THE SCOPE OF RESTITUTION TO LOSSES
        FROM THE OFFENSE OF CONVICTION AND FOR VICTIMS OF
        THE OFFENSE OF CONVICTION

In *United States v. Hughey*, 495 U.S. 411 (1990), the Supreme Court held that the VWPA defines not only who is a victim entitled to restitution, but also the scope of restitution available to that victim.   The language in the VWPA that provides that the court may "make restitution to any victim of such offense" means that restitution is limited to victims of the offense of conviction.   The Court interpreted the statute to indicate that "Congress intended restitution to be tied to the loss caused by the offense of conviction." *Id* at 418.

The Supreme Court further explained how the VWPA provides that a discretionary order of less than full restitution is built into the statute.   The Court stated:

> "The remaining considerations preceding the catchall phrase also are designed to limit, rather than to expand, the scope of any order of restitution. These factors—'the financial resources of the defendant' and "the financial needs and earning ability of the defendant's dependents"—provide grounds for awarding **less than full** restitution under the statute."

*Id* at 418-19 (italic in original, bold added for emphasis)

The VWPA has been expanded since *Hughey* was decided (eg. to expand restitution to other parts of a scheme to which a defendant was convicted), but those changes do not affect the application here.

The opinion in *Hughey* also makes clear that "fixing the substantive boundaries of such orders" is defined by the VWPA, not by statute setting forth the procedures for issuing such orders (now numbered 18 U.S.C. § 3664). This analysis by the Supreme Court undermines the government's citation to 18 U.S.C. § 3664 (restitution procedural implementation) for the proposition that "[u]nder the VWPA, once the decision to award restitution has been made, 'the court shall order restitution to each victim in the full amount of each victim's losses . . .[,] without consideration of the economic -circumstances of the defendant.'" Thus, *Hughey* makes clear that the cited language is not controlling, and that district courts can order some restitution without then being bound to order full restitution for all restitution requests.

E.   BOTH THE VWPA AND MVRA ALLOW FOR A DEFENDANT TO BE BOUND BY AN AGREEMENT TO PAY RESTITUTION THAT IS FOR PERSONS OTHER THAN THE VICTIM OF THE OFFENSE

One of the cases that the government cites as an example where restitution was ordered for grief/psychological counseling is *United States v. Wolfe*, 22-cr-00322-

JFW, Dockets 57, and 68.  In that case, the defendant agreed in the plea agreement to pay restitution to persons other than the victim of the offense.  The defendant further agreed to pay specified amounts by the victim's mother and father.  The VWPA specifically makes such agreements by the defendant enforceable against the defendant.  The provision in the VWPA states that "[t]he court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."  18 U.S. Code § 3663(a)(1)(A).  Mr. Henry's  plea agreement contained no such provision.  Therefore the example cited is inapplicable.

III.    Legal Analysis

    A.    BECAUSE DREW HENRY CANNOT NOW AND WILL NOT IN THE FORSEEABLE FUTURE BE ABLE TO PAY ANYTHING MORE THAN SYMBOLIC RESTITUTION, THE COURT SHOULD DECLINE TO ORDER THE REQUESTED $362,998.65 IN RESTITUTION

The Court can decline to order discretionary restitution based in part upon defendant's lack of financial resources.  18 U.S. Code § 3663(a)(1)(B)(i).  Here, the claimed restitution is $362,998.65.

Drew Henry provided under oath declarations to U.S. Probation concerning his financial resources, and signed a release allowing U.S. Probation to obtain financial records to confirm his statements about his financial condition.  Drew Henry has been

incarcerated at MDC-Los Angeles since August 2019. He has no earned income. He has no bank accounts. He has no assets of significant value. His only income is money that his mother occasionally puts on his account at MDC so that he can order commissary items. The Court sentenced Drew Henry to 13 years of imprisonment in the Bureau of Prisons. When Drew Henry was last working, he was making $10/hour. Therefore, for the foreseeable future, Drew Henry will have little or no income.

The government points to Drew Henry's bachelor's degree and masters' degree and two jobs paying $15/hour as evidence of his prospect of making higher wages in the future. The government suggests that restitution should be ordered even if largely symbolic.

A VWPA restitution order must be based on some evidence the defendant may be able to pay the amount fixed when required to do so. *United States v. English*, 92 F.3d 909, 916-17 (9th Cir. 1996).

However, Mr. Henry had to drop out of his last $15/hour job because of his drug use. It was during self-imposed pressures of academia, that he started the downward path of abusing opioids. His last job was doing day labor for his father being paid $10/hour. The types of jobs where those degrees would significantly increase Mr. Henry's earning ability will not be available for several reasons. The study are primarily theoretical material. Mr. Henry dropped out of his doctoral program because

his addiction had overtaken his ability to function.  Therefore Mr. Henry will not be able to get a positive academic reference from his professors.  Therefore, all evidence supports the prospect that future employment upon release will likely be at or near the minimum wage.  And as the PSR writer concluded, Mr. Henry will need the little income he has upon release to support himself.

B.   THE COURT SHOULD DECLINE TO GRANT RESTITUTION TO THE ESTATE OF N.A. FOR HIS LOST FUTURE INCOME

The government has presented a claim for lost wages of N.A. in the amount of $312,989.79.  The underlying data is not supported by a declaration.  The claim for lost income is too speculative.

The financial calculations are presented in the form of a declaration from United States Attorney's Office employee Stephen Loveman, an attorney on inactive status who has worked for the United States Attorney's Office as a forensic auditor.

The declarant is not an independent expert.  He is not a forensic economist.  He is a forensic auditor.  He may be an expert at looking at financial records for evidence of fraud or other crimes.  That does mean he necessarily has expertise in calculating the present value of lost future wages.  There is no information about how often that he calculates the present value of lost future wages, or instances when he has done so in

the past, or has testified about the subject as an expert.

There is no information from a vocational expert.  There are no W-2's for past income.  There are only two paystubs and the face page of a tax return that he received as the source for information.  The declaration assumes that that N.A. did not work at all during the first four months of 2018.  The assumption that N.A. would regularly continue working are likely to be undercut by facts that would need to be explored further test the reliability of the assumptions.

There are reasons to believe that the assumptions made by Mr. Loveman are not reliable.

One of the assumptions was that N.A. would continue working for 37 years until age 62.  However, N.A. was essentially playing "Russian Roulette" with his life by the combination of drugs he was known to take near the time of his death.  At the time of his death, N.A.'s blood contained alcohol, morphine (a metabolite of heroin), and fentanyl.  N.A. was known by his family to have an addiction to heroin in the 4 or 5 years before his death.   At the same time he was known to use Xanax, a Benzodiazepine.   The route of administration which N.A. used for the self administration of opioids was by injecting the drug into his arm.  Injection is the most lethal method of administration.  The Los Angeles Coroner's office did not test N.A. for Benzodiazepines even though N.A.'s brother told investigators that N.A. had used

un-prescribed Xanax shortly before his death.   The combination of the use of Benzodiazepines and Opioids is lethal combination.[1]   Even a rough calculation of N.A.'s life expectancy depends on knowing more about his addictions and drug history.   How many times has he overdosed before his overdose death?   If he had overdosed before, and he continued to use such drug combinations, then the likelihood of an overdose death may have been inevitable.

But even due to heroin use alone, one study showed an 18 year reduction in life expectancy.[2]

In the context of a civil claim for damages, discovery relating to N.A.'s drug use is highly probative.   In *Carroll v. Morgan*, 17 F.3d 787, 791 (5th Cir.1994), records from a treatment center for alcohol and drug abuse were admissible on the issue of damages.   The Fifth Circuit held that the defendant in that case was entitled to show the plaintiff "was not a healthy person and that his intemperance might have resulted in a reduced life expectancy." *Id*.

N.A.'s drug addiction is also relevant to the likelihood that he would have been

---

[1] "From 2019 to 2020, benzodiazepine overdose visits per 100,000 emergency department visits increased (23.7%), both with (34.4%) and without (21.0%) opioid co-involvement. From April–June 2019 to April–June 2020, prescription and illicit benzodiazepine-involved overdose deaths increased 21.8% and 519.6%, respectively. During January–June 2020, 92.7% of benzodiazepine- involved deaths also involved opioids, and 66.7% involved illicitly manufactured fentanyls."

Liu S, O'Donnell J, Gladden RM, McGlone L, and Chowdhury F (2021) Trends in Nonfatal and Fatal Overdoses Involving Benzodiazepines—38 States and the District of Columbia, 2019–2020. MMWR Morb Mortal Wkly Rep 70:1136–1141, available at: https://www.cdc.gov/mmwr/volumes/70/wr/mm7034a2.htm?s_cid=mm7034a2_w

[2] B. Smyth, "Years of Potential Life Lost among Heroin Addicts 33 Years after Treatment" Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2039886/

unable to keep a job.  The information about his job history is so scant that consistent future employment is hardly a given, taking into account N.A.'s regular illicit use of powerful drugs. Also potentially interfering with N.A.'s ability to work, had he lived, is the risk that incarceration would have prevented him from working.  Further inquiry into this risk is relevant to the claim of lost wages.  N.A. was arrested for burglary in April 2018.  Also, N.A. was known to distribute Xanax pills.  This conduct could have resulted in his incarceration.

At a minimum, the issues concerning the claim of lost future wages is complex, and disputed.  The Court should follow the holding of *Fountain*, and find that under the VWPA the claim for lost future wages in this case is complex and contested, and in this case, not appropriately decided in a summary fashion as ancillary to a criminal sentence.  *United States v. Fountain*, 768 F.2d 790, 801-802 (7th Cir. 1985).

C. THE COURT SHOULD DECLINE TO GRANT RESTITUTION TO N.A.'S PARENTS D.A. AND I.A. FOR THE PARENTS' LOST WAGES

The government requests restitution for lost wages on behalf of N.A.'s father D.A. for approximately 44 days in the amount of $22,429.44, beginning on the day of N.A.'s death when N.A. spoke to law enforcement investigators in Los Angeles County.  D.A. was not losing work in El Dorado County on the day of N.A.'s death because he had already taken that day off to be in Los Angeles County.   The lost

wages were not necessary to assist in the prosecution.

The government also requests lost wages on behalf of N.A.'s mother I.A. for lost wages in the amount of $2,877.36.

The VWPA "is not the equivalent of a wrongful death statute under which very broad recovery is permitted." *United States v. Dayea*, 73 F.3d 229, 231 (9th Cir. 1995) "Section 3663(b) lists both who may receive restitution and the kinds of losses which an award may compensate." *Id*. "These listings define the limits of restitution that may be ordered." *Id*.

Restitution for lost income is permitted to the victim "where a victim has suffered bodily injury, § 3663(b)(2); or where the victim incurs expenses 'related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense,' § 3663(b)(4)." *Dayea*, 73 F.3d at 231. Restitution for "necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care" is permitted "in the case of an offense resulting in bodily injury to a victim" under (b)(2)(A).

In *Dayea*, after a police officer was killed by a drunk driver, his widow sought reimbursement for her husband's lost income and for her increased insurance costs.  73 F.3d 229.  The Ninth Circuit held the officer's widow did not qualify as a "victim" under the VWPA because she did not personally suffer bodily injury as required by 18

U.S.C. § 3663. *Id*. "Though she would qualify as an injured plaintiff in a wrongful death action, [the Ninth Circuit] held that she did not qualify as a 'victim' in this context because she did not personally suffer bodily injury" under the VWPA. *United States v. Andrews*, 600 F.3d 1167, 1174 (9th Cir. 2010) (Clifton, J. and Fernandez, J. concurring).

*Dayea* precludes the order of restitution for lost income by N.A.'s parents. Like the widow in *Dayea*, N.A.'s parents themselves did not suffer bodily injury under 3663(b)(2), or lose income related to the investigation or prosecution of the offense under 3663(b)(4). They therefore cannot receive lost income under the VWPA.

Although the VWPA was amended after *Dayea*, the subsections of the statute analyzed in *Dayea* remain unchanged. Lost income is only permitted to "the victim" "in the case of an offense resulting in bodily injury to a victim," (b)(2), or where "the victim" incurs expenses "related to the investigation or prosecution of the offense or attendance at proceedings relating to the offense" (b)(4).

In a footnote to its restitution request, the government concedes that the claim of N.A.'s parents for lost wages is precluded by the holding in *Dayea*. Government's Restitution Memorandum, Docket 125, p. 12, n. 4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.   THE COURT SHOULD DECLINE TO ORDER RESTITUTION TO
N.A.'S BROTHER AND MOTHER FOR PSYCHOLOGICAL
COUNSELING

The government requests $15,000 for restitution for ongoing psychotherapy for

N.A.'s brother J.A. from November 2018 to the present.  The documentation consists

solely of an unsworn email from J.A. to the government in which J.A. says he has had

too many sessions to count at $150 per session.  There is insufficient documentation to

reliably calculate the amount claimed.

The government requests $2740 for psychotherapy for N.A.'s mother I.A.

These claims are more in the nature of consequential damages that are not

compensable.

The VWPA "is not the equivalent of a wrongful death statute under which very

broad recovery is permitted." *Dayea*, 73 F.3d at 231. "Section 3663(b) lists both who

may receive restitution and the kinds of losses which an award may compensate." *Id*.

"These listings define the limits of restitution that may be ordered." *Id*.  In *United

States v. Hicks*, 997 F.2d 594, 601 (9th Cir. 1993) the Ninth Circuit held that

psychological care is not compensable as restitution in the absence of a physical injury.

See also *United States v. Follett*, 269 F.3d 996, 1001 (9th Cir. 2001) ("restitution

orders can cover psychological care only when there has been a bodily injury").

Attached as Exhibit A to this memorandum is the unpublished Ninth Circuit

memorandum decision in *United States v. Benally*, No. 12-10502 (9th Cir. Dec 18, 2013) which is presented as persuasive, but non-binding authority ("The district court clearly erred by ordering Defendants to pay restitution for costs of the victim's psychological treatment in the absence of a finding that the victim suffered physical injury from the robbery.)  Thus, the weight of authority suggests that restitution for psychological treatment is only available under VWPA when that same person was found to have suffered a physical injury from the offense of conviction.  There is no evidence that N.A.'s brother or mother suffered a physical injury as a direct and proximate result from the offense of conviction.  Therefore, the Court should deny this claim for restitution.

## IV   GENERAL OBJECTIONS TO AN ORDER OF RESTITUTION AND RELATED REQUESTS

Drew Henry makes the following additional arguments and objections in support of his request that the Court decline to impose restitution in this case.

### A.   REQUEST FOR FACTUAL FINDINGS

The government argues that factual findings in support of an order of restitution are not required.  Drew Henry requests that the Court make findings necessary to support any order imposing a restitution obligation on him.  Restitution orders require factual findings to support their imposition.  *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022); *United States v. Anderson*, 741 F.3d 938, 952 (9th Cir. 2013) ("Remand is

appropriate where the restitution award lacks an adequate evidentiary basis and the district court failed to explain its reasoning.")

**B.    THE ABILITY OF A DEFENDANT TO PAY MUST BE CONSIDERED IN DETERMINING WHETHER TO IMPOSE RESTITUTION, AND IF SO, TO ALSO BE CONSIDERED IN DETERMINGING THE AMOUNT OF RESTITUTION**

"In determining the amount of a restitution order, the district court is required to consider the ability of the defendant to pay." *United States v. Lawrence*, 189 F.3d 838, 848 (9th Cir. 1999).

**C.    OBJECTION TO ANY FINDING THAT N.A.'S FAMILY ARE VICTIMS WITHIN THE MEANING OF THE VWPA**

Under the VWPA, a "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered...." 18 U.S.C. § 3663(a)(2).  Objection is made to finding that N.A.'s family – mother I.A., father D.A., and brother J.A. within the meaning of the VWPA.  Objection is further made that the claimed restitution were for losses not "proximately caused" by Drew Henry.

D.   OBJECTION IS MADE TO THE RESTITUTION REQUESTED, BECAUSE THE PROCESS VIOLATES THE RIGHT TO A JURY TRIAL UNDER THE SEVENTH AMENDMENT.

Although some forms of restitution were permitted as part of criminal cases at the time of the adoption of the Seventh Amendment in 1791, the types of claims here are in the nature of a civil action for damages.   As such, the Seventh Amendment requires a jury trial on such claims.   Objection is made based upon the Seventh Amendment to any imposition of such requested restitution absent a jury trial on the claims for money presented by the government as a restitution request that is actually akin to suits at common law.   Cf. *United States v. Brown*, 744 F.2d 905 (2nd Cir. 1984).

E.   BECAUSE THE FACTS ADMITTED AS PART OF THE PLEA AGREEMENT (DISTRIBUTION RESULTING DEATH) ONLY REQUIRES BUT FOR CAUSATION, THE IMPOSITION OF RESTITUTION REQUIRES ADDITIONAL PROOF OF PROXIMATE CAUSE OF THE HARM CAUSED, WHICH PROOF IS MISSING

The offense conduct admitted only required "but for" causation.   *Burrage v. United States*, 571 U. S. 204 (2014).   But restitution under the VWPA requires further proof of that a "person was directly and proximately harmed as a result of the commission of an offense" 18 U.S.C. 3663(a)(2).   The government has failed to prove proximate cause.   To do so would require a showing that the result of death here was

foreseeable on this occasion of distributing the drug to N.A.  Here, it was unknown to Drew Henry that N.A. would ingest the fentanyl by injection rather than by smoking, and by combining the intake of fentanyl with other drugs, both of which factors increased the possibility of death.

F.   THE IMPOSITION OF RESTITUTION IN THIS CASE, WITHOUT FIRST PRESENTING THE RESTITUTION CLAIMS TO U.S. PROBATION TO ADDRESS IN THE PRESENTENCE INVESTIGATION REPORT, WOULD VIOLATE DUE PROCESS

Due process challenges to the application of the VWPA have been defeated in part because of the protections and procedures of Fed. R. Crim. P. 32 and 18 U.S.C. 3664 by which restitution claims are first addressed in a Presentence Investigation Report to which the defense can object.  *See*, *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir. 1984) (Fifth Amendment due process challenge defeated because reliability of process afforded by Fed. R. Crim. P. 32 procedure, but recognizing possible due process concerns), superseded by statute on other grounds as stated in *United States v. Edwards*, 728 F.3d 1286, 1292 (11th Cir. 2013).  Here no affidavits were presented to U.S. Probation by N.A.'s family.   Here, the Presentence Investigation determined that no restitution should be ordered.  Mr. Henry objects to the imposition of restitution and the application of the VWPA here on due process grounds.  There are a lack of discernable standards and procedural safeguards to assure

the reliability and fairness of imposition of a restitution award as the VWPA is appied here.

## V.   IF ANY RESTITUTION IS GRANTED, PAYMENT CONDITIONS ARE REQUESTED

Because Drew Henry will be unable to earn money while serving the balance of his 13 year prison sentence, he requests that the burden of making payments not fall on his mother who will be putting money on his books for commissary.

Therefore he request orders stating:

> Pursuant to 18 U.S.C. § 3612(f)(3)(A), interest on the restitution ordered is waived because the defendant does not have the ability to pay interest.
>
> Restitution shall be paid in monthly installments of at least 10% of defendant's gross monthly income, but not less than $100, whichever is greater, during the period of supervised release. These payments shall begin 30 days after the commencement of supervision.
>
> Nominal restitution payments are ordered as the Court finds that the defendant's economic circumstances do not allow for immediate payment of the amount ordered

1    VI. CONCLUSION:

2

3       Drew Henry requests that the Court decline to order restitution.

4 RESPECTFULLY SUBMITTED:     May 9, 2024.

5                                *Richard Raynor*

6                                RICHARD W. RAYNOR
                               Attorney for Defendant

7                                DREW HENRY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28